IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL YEAGER,** | : | No. 3:10cv1528 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| **LACKAWANNA COUNTY CORRECTIONAL FACILITY and LACKAWANNA COUNTY SHERIFF'S DEPARTMENT,** | : : : : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court for disposition are Defendants Lackwanna County Correctional Facility and Lackawanna County Sheriff's Department's motions to dismiss the plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motions are ripe for disposition.

## BACKGROUND

Plaintiff Michael Yeager ("Yeager") was charged with Theft by Unlawful Taking, Receiving Stolen Property, and Criminal Mischief after an alleged incident on February 28, 2009. (Compl. ¶ 14 (Doc. 1)). A warrant was issued for Yeager's arrest. (Id. ¶ 15). On March 22, 2009 Yeager was picked up on the warrant and released after appearing before a magistrate. (Id. ¶ 16). Yeager then failed to appear for a preliminary hearing on March 25, 2009 and another warrant was issued for his arrest. (Id. ¶¶ 17, 18).

Upon learning of the issuance of the second warrant, Yeager personally appeared at the Lackwanna County Courthouse and presented himself to Defendant Lackawanna County Sheriff's Department ("the Sheriff's Department"). (Id. ¶ 18). Yeager alleges that he provided the Sheriff's Department with certain documentation, "and was assured that the warrant was being lifted." (Id.) Yeager spoke with Chief Public Defender Sidney Prejean and applied for representation by a public

defender. (Id.)

On April 9, 2009 at 11:00 p.m., members of the Scranton Police Department, including Officer Jessica Dining, responded to Yeager's residence and executed the second warrant which had not, in fact, been rescinded. (Compl. ¶¶ 19, 20). Yeager protested that the warrant was in error and offered to provide the officers with documentation, but the officers arrested Yeager and took him into custody. (Id. ¶¶ 21-23). Yeager was remanded to the custody of Defendant Lackawanna County Correctional Facility ("the Correctional Facility") and was an inmate for eight days, from April 9, 2009 until April 16, 2009. (Id. ¶ 23).

Yeager alleges that he "requested several opportunities to contact his attorney or talk with one of the counselors at the prison and was denied[.]" (Compl. ¶ 25). It was not until April 16, 2009– the day of his release– that Yeager was allowed to speak with a counselor and call Public Defender Prejean. (Id.) The warrant was lifted shortly thereafter and Yeager was released. (Id.)

On July 23, 2010 Yeager filed his complaint. (Doc. 1).[1] Count I of the complaint alleges that "[t]he Defendants, acting under sixth [sic] color of state law, deprived the Plaintiff of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, but not limited to, his right to be free from unreasonable searches and seizures

---

[1] The complaint named not only the Sheriff's Department and the Correctional Facility as defendants, but also the City of Scranton, the Scranton Police Department, the Mayor of Scranton, the Scranton City Council, Officer Jessica Dining, Chief David Elliot, Lackawanna County Commissioners Mike Washo and Corey O'Brien, and Sheriff John Szymanski. (Id.) These other defendants were dismissed from the case on March 14, 2011 upon Yeager's notice of dismissal. (Docs. 17, 18).

2

and his right not to be deprived of his liberty without due process of law . . . in violation of . . . 42 U.S.C. Section 1983[.]"  (Compl. ¶ 30).  Count II of Yeager's complaint purports to raise a claim under Article I, Section 8, of the Constitution of the Commonwealth of Pennsylvania, "including his right to be secure in his person from unreasonable searches and seizures, and to be secure against unlawful arrest[.]"  (Compl. ¶ 32).  The Sheriff's Department and The Correctional Facility filed motions to dismiss on October 4, 2010.  (Docs. 9, 10).  Yeager filed briefs in opposition on January 14, 2011.  (Docs. 14, 15).  On March 2, 2011 the case was reassigned to the undersigned judge, bringing the case to its present posture.

**JURISDICTION**

The court has federal question jurisdiction over this case brought under section 1983 for violation of plaintiff's constitutional rights.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**LEGAL STANDARD**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  Granting the motion is appropriate if, accepting as

3

true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct.

4

1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

The Sheriff's Department and the Correctional Facility have each filed motions to dismiss Yeager's complaint.[2]  The court will address the two counts of Yeager's complaint in order.

**1. Section 1983 Claims**

As Yeager's complaint acknowledges, 42 U.S.C. § 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996). In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two criteria must be met.  First, the conduct complained of must have been

---

[2] The Sheriff's Department's motion to dismiss was also brought on behalf of Sheriff John Szymanski.  (Doc. 9).  Because the sheriff has been dismissed from the case, we ignore that portion of the motion.

committed by a person acting under color of state law.  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  The parties do not dispute whether the defendants acted under color of state law, only whether Yeager's constitutional rights were violated.

Before addressing the constitutional violations which Yeager alleges, the court must examine the Sheriff's Department and the Correctional Facility's statuses as local government entities.  The United States Supreme Court has rejected attempts to hold municipalities liable under the theories of respondeat superior or vicarious liability.  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 736 (1989).  A municipality may be found liable under section 1983 only when the municipality itself has caused a constitutional violation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

The Supreme Court has stated that "for purposes of § 1983 an act could not be attributed to a municipality merely because it was an act of a municipal agent performed in the course of exercising a power delegated to the municipality by local law, and we reasoned instead that 'it is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'"  Board of Cnty Com'rs of Bryan Cnty, Okl. v. Brown, 520 U.S. 397, 417 (1997) (quoting Monell, 436 U.S. at 694).  This policy requirement is satisfied "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself.  In this situation, the choice of policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply

because it is the very policymaker who is acting." Brown, 520 U.S. at 418 (citing Pembaur v. Cincinnati, 475 U.S. 469, 480-481 (1986)).

Liability only exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  If a municipality has a policy or custom of not training its police officers then the municipality will be liable for that failure "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" Brown, 269 F.3d at 215 (quoting City of Canton, 489 U.S. at 388).

We read Yeager's complaint as alleging violations of his constitutional rights under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution.[3]  Based on Yeager's allegations, we understand Yeager to claim deprivations of his Fourth and Fourteenth Amendment rights against the Sheriff's Department and deprivations of his First, Fourth, Sixth and Fourteenth Amendment rights against the Correctional Facility.

In support of these claims, Yeager's complaint lays out several

---

[3] The complaint states:
> "The Defendants, acting under sixth [sic] color of state law, deprived the Plaintiff of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, but not limited to, his right to be free from unreasonable searches and seizures and his right not to be deprived of his liberty without due process of law . . . in violation of . . . 42 U.S.C. Section 1983[.]"

(Compl. ¶ 30).

"General Allegations on Policy and Practice." (Compl. at 2-3). Yeager alleges that the Sheriff's Department and The Correctional Facility acted with deliberate indifference to Yeager's constitutional rights by having policies and customs of: "Subjecting persons to unlawful confinement;" "Condoning and encouraging officers in the belief that they can violate the rights of persons;" "Failing to have a policy . . . allowing Plaintiff to be taken before a Judge . . . on the lawfulness of his confinement;" "Failing to allow the Plaintiff to post bail;" "Failing to have adequate policies in place wherein Plaintiff was permitted to contact his family, friends, or attorney . . .;" "Failing to implement an adequate policy for the purpose of recalling bench warrants;" and "Failing to implement policies at [the Correctional Facility] concerning the detention of new inmates[.]" (Compl. ¶ 13). Although Yeager directs these allegations at all defendants, some of these alleged policies and customs, or lack thereof, are more applicable to the Sheriff's Department and others are more applicable to the Correctional Facility. Taking these allegations in a light most favorable to the plaintiff, we have endeavored to assign them to the appropriate defendant and cause of action.

### a. Yeager's Claims Against the Sheriff's Department and the Correctional Facility for Violation of His Constitutional Rights under the Fourth and Fourteenth Amendments

"A plaintiff may assert a § 1983 claim for unlawful detention, also referred to as false imprisonment, under both the Fourth and Fourteenth Amendment. In this context, the Fourth Amendment requires 'the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.'" Potts v. City of Philadelphia, 224 F. Supp. 2d 919, 936 (E.D. Pa. 2002) (quoting Baker v. McCollan, 443 U.S. 137, 143 (1979)). To make out a claim of unlawful detention under the Fourth Amendment, the plaintiff must allege that he was seized within

8

the meaning of the amendment and that the state did not have probable cause for the seizure.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988); Jones v. O'Rourke, No. 3:06-CV-0738, 2008 WL 2571228, *10 (M.D. Pa. June 25, 2008).  A plaintiff has been seized, for purposes of the Fourth Amendment, "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  The Sheriff's Department and the Correctional Facility have not argued that Yeager was not seized, for purposes of the Fourth Amendment.  It is clear that Yeager's arrest and eight-day detention constitute a seizure within the meaning of that amendment.  Thus, the only remaining issues are (1) whether there was probable cause for Yeager's seizure and (2) whether the Sheriff's Department or the Correctional Facility had a policy or custom that caused Yeager's seizure.

"Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense."  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) (citations omitted).  "[T]he question of probable cause in a section 1983 damage suit is one for the jury."  Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998) (citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978)).

We determine that Yeager has adequately alleged facts that, read in a light most favorable to Yeager, indicate that the Sheriff's Department lacked probable cause to detain him and that the Sheriff's Department caused Yeager's unlawful confinement.  Yeager has alleged that the Sheriff's Department failed to rescind the second warrant, while leaving Yeager with the impression that the warrant had been rescinded.  Assuming Yeager's allegations to be true, the Sheriff's Department would

have lacked probable cause to keep the second warrant active once Yeager presented himself at the courthouse. A reasonable individual could not believe that a warrant could remain active once the subject appeared at the courthouse to respond to the warrant. We emphasize that a probable cause analysis is inherently factual and rarely a proper basis for a motion to dismiss where the plaintiff, as here, has alleged some fact that plausibly alleges a lack of probable cause. See Montgomery, 159 F.3d at 124. We also find that Yeager has plausibly alleged that his unlawful confinement was caused by the Sheriff's Department's actions. Yeager alleges that the Sheriff's Department failed to implement a policy for recalling warrants, which implies a policy of failing to recall warrants. Yeager also alleges that the Sheriff's Department had a policy of condoning deputies' violations of citizens' rights against unlawful seizure. Accordingly, the Sheriff's Department's motion to dismiss will be denied with respect to Yeager's section 1983 claim under the Fourth Amendment.

  Regarding the Correctional Facility, we determine similarly that Yeager has alleged a lack of probable cause for his confinement. In a light most favorable to Yeager, we read the complaint to allege that the Correctional Facility held Yeager for eight days based upon a warrant which was not valid. Discovery may show that the Correctional Facility's reliance on the invalid warrant was reasonable, but at the motion to dismiss stage we take the facts alleged in a light most favorable to the Plaintiff. Yeager has also alleged that his unlawful confinement was caused by the Correctional Facility's policies, including failure to have a process to ensure inmates are brought before a judge, failure to have a process enabling inmates to post bail, failing to allow inmates access to telephones, and failure to institute policies regarding new inmates. Read in the abstract some of these allegations are vague, but we read them in

conjunction with the fact that Yeager complains as an inmate who was detained upon an allegedly faulty warrant, which gives each alleged policy or policy failure a more specific meaning. Finally, Yeager alleges these policies, or lack thereof, caused his constitutional deprivation. Accordingly, the Correctional Facility's motion to dismiss will be denied with respect to Yeager's section 1983 claim under the Fourth Amendment.

Besides the Fourth Amendment, a claim for unlawful detention can also be brought as a deprivation of liberty in violation of the Due Process Clause of the Fourteenth Amendment. The Supreme Court, in <u>Baker v. McCollan</u>, stated that "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (U.S. 1979) (but holding that three day detention based on mistaken identity was not a constitutional deprivation under the Fourteenth Amendment). The Sheriff's Department and the Correctional Facility have not cited precedent setting the maximum period of time for which a plaintiff may be detained before that detention amounts to a deprivation of liberty without due process of law. Accordingly, we find that Yeager's allegation that he was detained for eight days pursuant to an allegedly faulty warrant but "in the face of repeated protests," states a claim for unlawful detention under the Fourteenth Amendment. Thus, Yeager has also stated a claim for unlawful confinement against the Sheriff's Department and Correctional Facility based on procedural due process under the Fourteenth Amendment.

**b. Yeager's Claims Against the Correctional Facility for Violation of His Constitutional Rights Under the First, Sixth and Fourteenth Amendments**

"Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment." Richardson v. Morris County Correctional Facility, No. 06-CV-2340, 2006 WL 3000234, *4 -6 (D.N.J. Oct. 20, 2006) (citing Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278, 1284 (E.D. Pa.1983); Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), *aff'd in part and vacated in part on other grounds sub nom.*, Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir.1979)).  The Correctional Facility itself cites caselaw for the proposition that one call per week is insufficient access to a phone under the First Amendment.  See Johnson v. Galli, 596 F. Supp. 135 (D. Nev. 1984).  As Yeager has alleged that he went eight days before he was allowed to contact his attorney, the court finds that Yeager has sufficiently alleged a violation of Yeager's right of access to the courts under the First and Fourteenth Amendments.

Although the wording of Yeager's complaint is somewhat unclear, we determine that Yeager has alleged a claim under the Sixth Amendment. As Yeager alleges to have been charged with Theft by Unlawful Taking, Receiving Stolen Property, and Criminal Mischief, his Sixth Amendment right to counsel attached.  See Brewer v. Williams, 430 U.S. 387, 398 (1977) (Sixth Amendment right to counsel attaches upon the initiation of formal judicial proceedings).  Yeager alleges that he requested to speak with a Correctional Facility counselor or to use the phone to contact his attorney and that these requests were denied for one week, as described above with regard to Yeager's claims under the First and Fourteenth Amendments.  Yeager has alleged that the Correctional Facility had a policy of not allowing inmates to contact their attorneys.  Thus, we find that

Yeager has sufficiently alleged a deprivation of his Sixth Amendment right to counsel. Accordingly, the Correctional Facility's motion to dismiss will be denied.

**2. Claim Under Pennsylvania Constitution**

The Sheriff's Department and The Correctional Facility also seek to dismiss Yeager's claim for monetary damages under the Pennsylvania Constitution. The defendants are correct, the Pennsylvania Constitution does not provide a cause of action for damages. See Jones v. City of Philadelphia, 890 A.2d 1188, 1215-16 (Pa. Commw. Ct. 2006). We are also persuaded that there is no private right of action for redress of alleged violations of the Pennsylvania Constitution. Bodnar v. Wagner, No. 3:07-CV-2038, 2010 WL 56097, *7 (M.D. Pa. Jan. 5, 2010) (noting that the Supreme Court of Pennsylvania has not ruled on the issue but finding that caselaw in state and federal courts uniformly holds that the Pennsylvania Constitution does not confer a private right of action akin to section 1983). Accordingly, the Sheriff's Department and the Correctional Facility's will be granted and Count II of Yeager's complaint will be dismissed.

**CONCLUSION**

For the reasons stated above, the defendants' motions to dismiss will each be granted with respect to Yeager's claim under the Pennsylvania Constitution and denied with respect to Yeager's claims under the First, Fourth, Sixth, and Fourteenth Amendments. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL YEAGER,** | : | No. 3:10cv1528 |
| **Plaintiff** | : | |
| v. | : | (Judge Munley) |
| **LACKAWANNA COUNTY CORRECTIONAL FACILITY and LACKAWANNA COUNTY SHERIFF'S DEPARTMENT,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this  28th  day of March 2011, upon consideration of Defendants Lackwanna County Correctional Facility and Lackawanna County Sheriff's Department's motions to dismiss the plaintiff's complaint (Docs. 10, 9) it is HEREBY **ORDERED** that the motions are **GRANTED**, in part, and **DENIED**, in part.

Defendant Lackawanna County Correctional Facility's motion to dismiss (Doc. 10) is:

**GRANTED** with respect to Plaintiff Yeager's claim under the Pennsylvania Constitution, and
**DENIED** with respect to Plaintiff Yeager's claims under section 1983 for violation of Yeager's constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments.

Defendant Lackawanna County Sheriff's Department's motion to dismiss (Doc. 9) is:

**GRANTED** with respect to Plaintiff Yeager's claim under the Pennsylvania Constitution, and
**DENIED** with respect to Plaintiff Yeager's claims under section 1983 for violation of Yeager's constitutional rights under the Fourth and Fourteenth Amendments.

**BY THE COURT:**

**s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**