**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL YEAGER,** | : | **No. 3:10cv1528** |
| **Plaintiff** | : | **(Judge Munley)** |
| **v.** | : | |
| **LACKAWANNA COUNTY CORRECTIONAL FACILITY and LACKAWANNA COUNTY SHERIFF'S DEPARTMENT,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the court for disposition are the Defendants Lackawanna County Correctional Facility and Lackawanna County Sheriff's Department's motions for summary judgment.  (Docs. 30, 32).  The motions have been briefed and are ripe for disposition.

**Background[1]**

Plaintiff Michael Yeager ("Yeager") was charged with Theft by Unlawful Taking, Receiving Stolen Property and Criminal Mischief and a warrant was issued for his arrest.  (Doc. 31, Def.'s Statement of Undisputed Materials Facts ("DSF") ¶ 1; Doc. 31, Ex. 1, Def.'s Summ. J. R. ("SJR") at 2).[2]  He was arrested on March 20, 2009, taken to the

_____

[1] Plaintiff failed to submit a brief in opposition to the defendants' motions for summary judgment.  According to the local rules, the statements of material facts as submitted by defendants are deemed admitted.  L.R. 7.6, 56.1.  We must determine whether "the deficiencies in the opponent's evidence designated in or in conjunction with the motion entitle the moving party to judgment as a matter of law."  Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir.1990).

[2] Defendants Lackawanna County Correctional Facility and the Lackawanna County Sheriff's Department submitted identical statements of undisputed material facts and "Summary Judgment Record."  (Docs. 31,

Lackawanna County Correctional Facility ("Correctional Facility") and released on bail that same day.  (DSF ¶ 3; SJR at 8-9).  Yeager failed to appear for a preliminary hearing on March 25, 2009, which prompted the issuance of a bench warrant by the Honorable Michael J. Barrasse of the Lackawanna County Court of Common Pleas on March 30, 2009.  (DSF ¶¶ 2, 4; SJR at 4, 36).  The bench warrant is stamped as filed on March 31, 2009.  (SJR at 36)  Generally, after the bench warrant is ordered, the arresting police department, in the instant case the Scranton Police Department, would enter the warrant into the system for distribution.  (Doc. 31, Ex. 1, Attorney Prejean's Statement at 88).

On March 30, 2009, Yeager appeared in the Public Defender's Office and spoke with Attorney Sidney Prejean.[3]  (Id.)  Yeager explained that he had a family emergency which prevented him from appearing at the preliminary hearing.  (Id.)  Yeager provided a postal money order for his restitution and completed an application for representation.  (Id.)  Attorney Prejean then called, or "checked," with the Lackawanna County Sheriff's Department ("Sheriff's Department"), speaking with whom he believes to be "Sergeant Oakey" or "Deputy Patrick."  (Id.)  They indicated that there was no warrant in the system.  (Id.)  Also on March 30, 2009, Attorney Prejean recalls speaking with Assistant District Attorney Hayes and Judge Barrasse.  (Id.)  Attorney Prejean explained to them that it was his belief that no bench warrant had been issued for Yeager, therefore, Judge

_____

33).  We will cite to the Correctional Facility's documents.  (Doc. 31).

[3] Attorney Sidney Prejean provided his "best narrative" of the circumstances surrounding Yeager's arrest in an email to Lackawanna County.  (DSF ¶ 12; Doc. 31, Ex. 1, Attorney Prejean's Statement at 88).

2

Barrasse did not issue a "lift order." (Id.) After the meeting, Yeager left the courthouse and awaited notification of his next court appearance. (Id.)

On April 9 or 10, 2009, the Scranton Police Department arrested Yeager pursuant to the bench warrant that was issued for his failure to appear at the preliminary hearing and he was brought to the Correctional Facility. (Id.; DSF ¶ 9). Attorney Prejean believed that between the ordering of the warrant on March 25 and Yeager's appearance in his office on March 30, the Scranton Police Department did not have the opportunity to enter the warrant into the system. (Doc. 31, Ex. 1, Attorney Prejean's Statement at 88). At some point after Yeager appeared in Attorney Prejean's office, the Scranton Police Department entered the warrant into the system and executed it. (Id.) A computer search done by the Correctional Facility at the time of Yeager's incarceration indicated that there was an outstanding warrant for Yeager due to his failure to appear at the preliminary hearing. (DSF ¶ 6; SJR at 50). A copy of the bench warrant indicates that it was filed on March 31, 2009, the day after he appeared in Attorney Prejean's office. (See Doc. 31, Ex. 1, "Bench Warrant Failure to Appear" at 36).

Upon admittance to the Correctional Facility, Yeager was provided with an Admission Kit, which contained a writing instrument, paper, envelopes and three stamps. (DSF ¶ 5; SJR, "Inmate Initial Issue Form" at 42). Yeager was also provided with a "Inmate Telephone ID Number Release Form," explaining the Lackawanna County Prison's telephone system. (DSF ¶ 7; Doc. 31, Ex. 1 at 56.). Yeager's form was signed and dated on April 10, 2009. (Doc. 31, Ex. 1 at 56).

Yeager's telephone record indicates that he attempted to make

3

twenty phone calls during his incarceration.  (DSF ¶ 14; Ex. 1, "Inmate Attempted Call Search Results" at 89).  A prisoner may make a telephone call from the prison by either depositing money into an account or by making a collect call.  (DSF ¶ 14; Doc. 31, Ex. 1, "Affidavit of Timothy M. Betti," at 91-93).  Yeager did not place a deposit into his account, therefore, the individual to whom the calls were being placed would have to agree to accept the charges.  (Id.)  Unfortunately, during his incarceration, no one accepted the charges.  (DSF ¶ 14).  Yeager was incarcerated from April 10, 2009, Good Friday of the Easter holiday, until April 15, 2009. (DSF ¶ 9).[4]   Yeager was released when a correctional counselor contacted the Lackawanna County Public Defender's Office on Yeager's behalf.  (Id.)

On July 23, 2010, Yeager filed a complaint.  (Doc. 1).  He asserts claims against the Correctional Facility and the Sheriff's Department pursuant to 42 U.S.C. § 1983 ("Section 1983").  On October 4, 2010, the Correctional Facility and the Sheriff's Department filed motions to dismiss the complaint.  (Docs. 9, 10).  On March 28, 2011, this court granted in part and denied in part the motions.  We found that the Yeager sufficiently alleged claims against the Correctional Facility for violation of his constitutional rights under the First, Fourth, Sixth and Fourteenth Amendments and claims against the Sheriff's Department for violations under the Fourth and Fourteenth Amendments.  (Doc. 19).  We also dismissed Yeager's state-law claim.  (Id.)

---

[4]  Yeager alleged in the complaint that he was detained from April 9, 2009 when he was taken into custody by the Scranton Police Department at 11:00 p.m. until April 16, 2009 when he met with his counselor and given an opportunity to call Attorney Prejean.  (Doc. 1, Compl. ¶ 23, 25).

On February 28, 2012, the Correctional Facility and the Sheriff's Department filed the instant motions for summary judgment.  (Docs. 30, 32).   Yeager's counsel requested and we granted two extensions of time to file a brief in opposition to the defendants' motions.  (Docs. 39, 41).  On May 23, 2012, after counsel failed to file a brief by the appropriate deadline, the court ordered that Yeager to file a brief within ten days from the date of the order.  (Doc. 42).  Yeager has not submitted a brief in opposition and the time for such filing has elapsed.  These motions are, therefore, ripe and will be treated as unopposed with all of defendants' factual averments accepted as true.  See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175-76 (3d Cir.1990); L.R. 56.1.

**Jurisdiction**

The court has federal question jurisdiction over this case brought under Section 1983 for violation of plaintiff's constitutional rights.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted). In pertinent part, Section 1983 provides as follows:

6

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity or other
> proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under Section 1983, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under color of state law.  Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Second, the conduct must deprive the plaintiff of rights secured under the United States Constitution or federal law.  Id.  The parties do not dispute whether the defendants acted under color of state law, only whether Yeager's constitutional rights were violated.

Municipalities and local government units are deemed "persons" subject to suit under Section 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Because they are parts of Lackawanna County, the Correctional Facility and the Sheriff's Department may be liable for Yeager's alleged constitutional violations under theory of municipal liability. The United States Supreme Court has rejected attempts to hold municipalities liable under the theories of respondeat superior or vicarious liability.  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 736 (1989).  The Court has stated that "for purposes of § 1983 an act could not be attributed to a municipality merely because it was an act of a municipal agent performed in the course of exercising a power delegated to the municipality by local law."  Bd. of Cnty Com'rs of Bryan Cnty, Okl. v. Brown, 520 U.S. 397, 416-17 (1997) (quoting Monell, 436 U.S. at 694).  Instead, "'it is [only]

7

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" Id. at 417 (quoting Monell, 436 U.S. at 694). This policy requirement is satisfied "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself. In this situation, the choice of policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting." Id. at 417-18 (citing Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986)).

    Liability only exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  If a municipality has a policy or custom of not training its police officers, then the municipality will be liable for that failure "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"  Brown, 269 F.3d at 215 (quoting City of Canton, 489 U.S. at 388).

    In the instant case, we find that Yeager has failed to establish that either of the defendants had an established policy or custom that violated his constitutional rights and, thus, cannot demonstrate municipal liability. Therefore, we will grant the Correctional Facility and Sheriff's Department's motions for summary judgment.  We will address each of the defendants' motions, in turn.

8

**The Correctional Facility**[5]

The Correctional Facility submits that it did not have a policy or custom that caused Yeager's alleged constitutional violations.  Under the First, Sixth and Fourteenth Amendments, Yeager alleges that the Correctional Facility failed to have an adequate policy in place to allow him to contact his family, friends or attorney to inform them of his whereabouts and the circumstances surrounding his incarceration.  (Doc. 1, Compl. ¶ 13).  After careful review, we agree with the Correctional Facility.

"The rights of access to the courts, the telephone, and to counsel are rooted in the First, Sixth, and Fourteenth Amendments."  <u>Aruanno v. Main</u>, Civ. No. 07-3867, 2010 WL 2710564, at *7 (D.N.J. July 7, 2010) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996); <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008).  "Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment."  <u>Richardson v. Morris Cnty. Corr. Facility</u>, Civil Action No. 06-2340, 2006

---

[5] We also find that the Correctional Facility cannot be liable because it is not recognized as a "person" under Section 1983.  <u>See</u> <u>Williams v. Lackawanna Cnty. Prison</u>, No. 4:CV-07-1137, 2010 WL 1491132, at *1 n. 2 (M.D. Pa. April 13, 2010) (dismissing all claims against Lackawanna County Prison because it is not a person for the purposes of Section 1983);  <u>Reynolds v. Lackawanna Cnty. Prison</u>, No. C.V. 4:CV-06-1190, 2006 WL 1896178, at *1 (M.D. Pa. July 7, 2006) (dismissing Lackawanna County Prison as a party because it is not a person who may be sued under § 1983); <u>Antoine v. Belleville Mun. Cnty.</u>, Civ. Action No. 10–1212, 2010 WL 2989991, at *3 (D.N.J. July 27, 2010) (citing a number of Third Circuit cases finding that a prison or correctional facility is not a person within the meaning of Section 1983).  For purposes of completeness, we will discuss in the main body of this memorandum the Correctional Facility and municipal liability.

WL 3000234, *4 (D.N.J. Oct. 20, 2006) (citing <u>Inmates of Allegheny Cnty. Jail v. Wecht</u>, 565 F. Supp. 1278, 1284 (E.D. Pa.1983); <u>Owens-El v. Robinson</u>, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), *aff'd in part and vacated in part on other grounds sub nom*., <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754 (3d Cir. 1979)). "[L]imited access to telephone calls . . . is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits." <u>Ingalls v. Florio</u>, 968 F. Supp. 193, 204 (D.N.J. 1997). "[I]f an inmate has an alternative method to communicate freely and privately with his counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation." <u>Royal v. Rochford</u>, Civil Action Nos. 11-7149, 11-5248, 2012 WL 259388, at *7 (D.N.J. Jan. 27, 2012) (citation omitted).

In the instant case, Yeager asserts in his complaint that he requested several opportunities to contact his family, friends and attorney or talk with one of the courselors at the prison and was denied. (Doc. 1, Compl. ¶¶ 13, 24). At Yeager's deposition he explained that when he was admitted to the Correctional Facility he was advised that he needed to have ten dollars "on the books" in order to make a phone call. (DSF ¶ 8; Doc. 31, Ex. 1 at 67). Timothy M. Betti, Assistant Warden for Treatment at the Correctional Facility, provided an affidavit explaining the intake policy and procedure that was in effect on April 10, 2009. (Doc. 31, Ex. 1, "Affidavit of Timothy M. Betti," at 91-93). After a review of Yeager's call log, Assistant Warden Betti indicated that Yeager was permitted to access the phone during the period of his incarceration. Yeager was not denied access to the telephone, but had not placed any money in his account that would permit him to have unrestricted use. (<u>Id.</u> ¶ 3). Instead, Yeager had to make collect calls, which he did, although no one ultimately accepted the

charges.  Id.

We find that the Correctional Facility had an adequate policy in place that permitted Yeager to contact individuals outside of the prison.  As explained in the "Inmate Telephone ID Number Release Form," Yeager would be allowed unlimited telephone access, however, he needed to either have money deposited in his account or have the party whom he was contacting accept the charges.  Unfortunately for Yeager neither occurred.  However, he also had alternative means of communication by way of the paper, envelops and stamps.  Based upon the Correctional Facility's policy, we find that the Correctional Facility's telephone policy did not violate Yeager's constitutional rights.   We will grant the Correctional Facility's motion for summary judgment as to Yeager's First, Sixth and Fourteenth Amendment claims.

We will also grant the Correctional Facility's motion for summary judgment as to his Fourth and Fourteenth Amendment claims.  A plaintiff may assert a Section 1983 claim for unlawful detention under the Fourth and Fourteenth Amendments.  Potts v. City of Phila., 224 F. Supp. 2d 919, 936 (E.D. Pa. 2002) (quoting Baker v. McCollan, 443 U.S. 137, 143 (1979)).  However, in order to find a municipality liable, Yeager must demonstrate that the Correctional Facility was executing a governmental policy or custom which caused his constitutional violations.  See Bd. of Cnty Com'rs of Bryan Cnty, Okl., 520 U.S. at 416-17 (quoting Monell, 436 U.S. at 694).

Yeager asserted in his complaint that the Correctional Facility had the following policies concerning his Fourth and Fourteenth Amendment rights: subjecting persons to unlawful confinement; failing to have a policy in place or adequate implementation of a policy allowing plaintiff to be

11

Case 3:10-cv-01528-JMM   Document 43   Filed 07/02/12   Page 12 of 15

taken before a judge, court or magistrate; failing to allow plaintiff to post bond or be released on his own recognizance; and failing to implement policies concerning the detention status of new inmates. We found that such allegations were sufficient to survive the motion to dismiss. However, at this stage of litigation, these bare allegations, absent any evidence that such policies or customs exist, are not sufficient to survive a motion for summary judgment. Therefore, Yeager has not demonstrated municipal liability. We will grant the Correctional Facility's motion for summary judgment as to his Fourth and Fourteenth Amendment rights for unlawful detention.

**The Sheriff's Department**

Yeager asserts Fourth and Fourteenth Amendment claims against the Sheriff's Department. In our memorandum ruling on defendants' motions to dismiss, we found that Yeager alleged that the Sheriff's Department failed to implement a policy for recalling warrants and that it had a policy of condoning deputies' violations of citizens' rights against unlawful seizure. (Doc. 19, Memorandum & Order at 10; Doc. 1, Compl. ¶ 13). The Sheriff's Department contends that it does not have a policy or custom that resulted in Yeager's alleged violations.

Based upon the undisputed facts, the only allegations asserted against the Sheriff's Department is that Yeager and Attorney Prejean consulted the Sheriff's Department to determine whether a warrant existed based on Yeager's failure to appear at the preliminary hearing. The Sheriff's Department informed them that there was no warrant in the system. The record demonstrates that the warrant was not filed until after Yeager made the inquiry. Based on the single allegation against the Sheriff's Department, we find that there is no evidence of a *policy*

12

condoning deputies' violations of citizens' rights against unlawful seizure. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ("'a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'") (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985)).

We also find that Yeager's contention that the Sheriff's Department failed to implement an adequate policy for the purpose of recalling bench warrants fails.  "In order to establish a claim based on a policy of inaction . . . plaintiffs must allege facts tending to establish a prior pattern of similar violations, contemporaneous knowledge of improper conduct, or failure to remedy continuing constitutional deprivations."  Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 433 (E.D. Pa. 2000) (quoting Boemer v. Patterson, No. Civ.A. 86–2902, 1987 WL 13741, at *4 (E.D. Pa. July 14, 1987)).  Yeager has not offered any evidence of a prior pattern of similar violations, improper conduct or failure to remedy constitutional deprivations.  Yeager also does not offer any evidence which would demonstrate why the Sheriff's Department, rather than another agency, should have had such a policy concerning bench warrants.  In the instant case, the Scranton Police Department was responsible for both the entering of the warrant into the system and the execution of the warrant.  (Doc. 31, Ex. 1, Attorney Prejean's Statement at 88).  Furthermore, the Sheriff's Department asserts that it does not have the authority to invalidate a warrant issued by the court.  Absent any evidence offered by Yeager of a policy or evidence that warrant liability for failure to implement a policy, we find that the Sheriff's Department is not liable.  Therefore, we will grant the Sheriff's Department's

13

motion for summary judgment.

**Conclusion**

      For the reasons stated above, we will grant the Correctional Facility and Sheriff's Department's motions for summary judgment.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL YEAGER,** | : | **No. 3:10cv1528** |
| **Plaintiff** | : | **(Judge Munley)** |
| **v.** | : | |
| **LACKAWANNA COUNTY** | : | |
| **CORRECTIONAL FACILITY and** | : | |
| **LACKAWANNA COUNTY** | : | |
| **SHERIFF'S DEPARTMENT,** | : | |
| **Defendants** | : | |

## ORDER

      **AND NOW**, to wit, this 2nd day of July 2012, Defendants Lackawanna County Correctional Facility and Lackawanna County Sheriff's Department's motions for summary judgment (Docs. 30, 32), are hereby **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of the defendants and to **CLOSE** this case.

                    **BY THE COURT:**


                    **s/ James M. Munley**

                    **JUDGE JAMES M. MUNLEY**
                    **United States District Court**